1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12
13
14
15
16

| | | |
|---|---|---|
| KEVIN PEEVY, | ) | 1:03-cv-06871-AWI-TAG HC |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS TO |
| Petitioner, | ) | DENY SECOND AMENDED PETITION |
| | ) | FOR WRIT OF HABEAS CORPUS (Doc. 21) |
| | ) | |
| vs. | ) | ORDER DIRECTING THAT OBJECTIONS |
| | ) | BE FILED WITHIN TWENTY DAYS |
| | ) | |
| C. M. HARRISON, Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

17          Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for

18   Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

19                              **PROCEDURAL HISTORY**

20          Petitioner is in custody of the California Department of Corrections and Rehabilitation as

21   a result of a July 15, 2002 conviction following a jury trial in the Superior Court of California,

22   County of Kern (the "Superior Court") for murder (Cal. Pen. Code § 187(a)), with a true finding

23   that Petitioner personally used a firearm in the commission of the murder (Cal. Pen. Code

24   § 12022.5).  (Clerk's Transcript on Appeal ("CT") 216-217, 219).   Petitioner was sentenced to a

25   term of twenty-five years plus four years for the firearm enhancement.  (Id.).

26          Petitioner filed a direct appeal of his conviction in the California Court of Appeals, Fifth

27   Appellate District (the "5th DCA"), which affirmed the judgment and sentence on June 24, 2003,

28   in an unpublished opinion.  (Lodged Document ("LD") 5).  Petitioner filed a petition for review

1 | in the California Supreme Court on July 25, 2003, which was denied on August 27, 2003.  (LD
2 | 6).

3 |         On October 10, 2004, and again on November 15, 2004, Petitioner filed state habeas
4 | petitions in the Superior Court.  (LD 8 & 9).  The Superior Court denied those petitions on
5 | November 16, 2004 and November 24, 2004, respectively.  (Id.).  Petitioner filed a habeas
6 | petition in the 5th DCA on February 3, 2005, which was denied on February 10, 2005.  (LD 10).
7 | On April 4, 2005, Petitioner filed his state petition in the California Supreme Court, which
8 | denied the petition on or about February 26, 2006.  (LD 11).

9 |         On December 8, 2003, Petitioner filed the instant federal petition.  (Doc. 1).  On June 14,
10 | 2004, Petitioner filed a First Amended Petition.  (Doc. 10).  On September 28, 2004, the Court
11 | issued an order indicating that deficiencies existed in the First Amended Petition and ordered
12 | Petitioner to file a second amended petition.  (Doc. 15).  On October 27, 2004, Petitioner filed a
13 | Petition for Rehearing of Petition for Writ of Habeas Corpus.  (Doc. 16).  On January 4, 2005,
14 | the Court ordered that the filing of October 27, 2004 be disregarded because it did not comply
15 | with the Court's order to file an amended petition and because it appeared to have been
16 | erroneously filed in this Court.  (Doc. 17).  That same date, the Court issued Findings and
17 | Recommendations to dismiss the amended petition for Petitioner's failure to comply with the
18 | Court's September 23, 2004 order.  (Doc. 18).  On February 17, 2005, Petitioner filed a series of
19 | documents including a Second Amended Petition, which were collectively filed as objections to
20 | the Findings and Recommendations.  (Doc. 21).  On February 16, 2005, the Court vacated the
21 | previous Findings and Recommendation and ordered Respondent to file an Answer to the Second
22 | Amended Petition.  (Doc. 23).  On May 16, 2005, Respondent filed his response.  (Doc. 26).
23 | .Petitioner did not file a Traverse.   Respondent concedes that Petitioner has exhausted the two
24 | claims for relief contained in the Second Amended Petition.  (Doc. 26, p. 5).

25 | **FACTUAL BACKGROUND**

26 |         The Court adopts the facts as summarized by the 5th DCA, in relevant part as follows:

27 | ///

28 | ///

1
2

John Harris was found dead north of the Taft Highway on January 24, 1993. The cause of death was multiple gunshot wounds to the head and chest. Harris's aunt told police Harris had left her house the evening before and planned to hitchhike to Taft.

3
4
5

Susan Wagner was a friend of appellant's who remembered letting him use her car on one or two occasions in early 1993. One of the times appellant borrowed her car he was gone so long she called appellant's wife to find out why he was taking so long in returning her car. Tire tracks from Susan Wagner's car could neither be excluded nor positively confirmed to match those found near Harris's body.

6
7
8
9

Appellant was interviewed by detectives in 1993. He told them at that time that he had a child with a woman named Kim Fowler. Fowler had been living with Harris, and appellant's son with Fowler, Jason, lived with them as well. Appellant had heard Harris was molesting Jason, but he spoke with Harris, Harris denied any molestation, and appellant believed him. He claimed the only time he left his house the Saturday Harris was killed was to buy a pack of cigarettes. On Sunday, he drove his brother-in-law Bobbie Orozco to Bakersfield. He denied borrowing Susan Wagner's car.

10
11
12
13
14

Lisa Chavez has two children; one fathered by appellant and one fathered by appellant's good friend John Platt. While Chavez was involved with appellant he told her he had killed Harris. Appellant told Chavez that he and Bobbie Orozco picked up Harris while Harris was hitchhiking, drove to a slough and shot Harris. Appellant said his wife was supposed to tell the police he and Orozco went to the video store. He said John Platt's wife Heather helped him dispose of his boots. Chavez finally decided to tell the police what she knew because Platt was allowing appellant to watch their son. Chavez admitted appellant described himself as a "hitman" and told her he had killed another person in the Lake Isabella area.

15
16

In December of 2000 Bakersfield detectives had Chavez record two telephone calls she made to appellant's house.

17
18

Clint Watts had worked with appellant in the summer of 1993. Appellant told Watts that he had shot the man who molested his child with a shotgun. Watts did not believe appellant at the time because he could not believe someone he just met would tell him he killed somebody, he thought appellant was just trying to impress him.

19
20

Appellant was arrested in January 2002. At that time he told police he had suspected Harris molested his son and may have threatened to kick Harris's ass or cut off his testicles, but he never threatened to kill Harris.

21
22

Heather Platt testified that she did not meet appellant until 1997 and he never asked her to cut up boots or pour acid on them.

(LD 5, pp. 2-3).

23

**DISCUSSION**

24

**I. Jurisdiction**

25
26
27
28

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>,

1  529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as

2  guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern

3  County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C.

4  § 2254(a); 28 U.S.C.§ 2241(d).  Accordingly, the Court has jurisdiction over this action.

5        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

6  ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

7  Lindh v. Murphy, 521 U.S. 320 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997),

8  overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only

9  applicable to cases filed after statute's enactment).  The original petition was filed on December

10  8, 2003, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

11        **II.  Legal Standard of Review**

12        A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

13  the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved

14  an unreasonable application" of, clearly established Federal law, as determined by the Supreme

15  Court of the United States" or (2) resulted in a decision that "was based on an unreasonable

16  determination of the facts in light of the evidence presented in the State court proceeding."

17  28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor,

18  529 U.S. at 412-413.

19        The first prong of federal habeas review involves the "contrary to" and "unreasonable

20  application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and

21  mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford,

22  384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established

23  federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

24  Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

25  [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141

26  (2005)(citing Williams v. Taylor, 529 U.S. at 405).  A state court decision involves an

27  "unreasonable application" of clearly established federal law "if the state court applies [the

28  Supreme Court's precedents] to the facts in an objectively unreasonable manner."  Brown v.

4

1  Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply

2  because the state court's decision is incorrect or erroneous; the state court's decision must also be

3  objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v.

4  Taylor, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly established Federal law"

5  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

6  of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade,

7  538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

8        The second prong of federal habeas review involves the "unreasonable determination"

9  clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual

10 findings.  Davis v. Woodford, 384 F.3d at 637 (citing Miller-El v. Cockrell, 537 U.S. 322

11 (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's

12 adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable

13 determination of the facts in light of the evidence presented in the State court proceeding."

14 Wiggins v. Smith, 539 U.S. at 520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state

15 court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity

16 to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable

17 when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.;

18 see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor,

19 543 U.S. 1038 (2004).  The AEDPA also requires that considerable deference be given to a state

20 court's factual findings. A state court's factual findings are  presumed to be correct, and such

21 presumption of correctness may be rebutted only by clear and convincing evidence.  28 U.S.C.

22 § 2254(e)(1).

23       To determine whether habeas relief is available under § 2254(d),  the federal court looks

24 to the last reasoned state court decision as the basis of the state court's decision.  Robinson v.

25 Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's

26 claims on the merits but provided no reasoning for its decision, the federal habeas court must

27 independently review the record to determine whether habeas corpus relief is available under

28 § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d

976, 981-982 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural

grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do

not apply and the federal court must review the petitioner's 's claims de novo.  <u>Pirtle v. Morgan</u>,

313 F.3d 1160, 1167 (9th Cir. 2002).-

### III.  <u>Petitioner's Substantive Claims Should Be Denied</u>

Petitioner has raised the following issues in the instant petition, which will be addressed

in reverse order:[1]

| | |
|---|---|
| **Ground One** | **Petitioner Was Deprived Of Right To The Effective Assistance Of Trial Counsel When His Attorney Failed To Argue That Third Party Evidence Fell Within An Exception To The Hearsay Rule** |
| | |
| **Ground Two** | **Petitioner Was Deprived Of Due Process When The Trial Court Ruled The Third-Party Culpability Evidence Inadmissible** |

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

| | |
|---|---|
| **Ground Two** | **Petitioner Was Deprived Of Due Process When The Trial Court Ruled The Third-Party Culpability Evidence Inadmissible** |

Petitioner contends that the trial court "committed reversible error when it excluded

defense evidence of third [sic] party culpability as inadmissible [sic] evidence because the

evidence bore sufficient indicia of reliability and was crucial to Appellants defense."  (Doc. 21,

p. 5).

Initially, the Court notes that a federal habeas corpus court has no authority to review a

state's application of its own laws, but rather must determine whether a prisoner's constitutional

or other federal rights have been violated.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

<u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990).  Generally, the admissibility of evidence is a

matter of state law, and is not reviewable in a federal habeas corpus proceeding.  <u>Estelle</u>, 502 U.S.

---

[1]Because the ineffective assistance of counsel claim in Ground One is premised on the assumption that Ground Two has merit, the Court will consider Ground Two first.

1    at 67; <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985).  Here, Petitioner contends that

2    the state court "committed reversible error" by improperly excluding evidence of regarding the

3    potential culpability of a third party through the application of the state's own rules of evidence,

4    specifically California's hearsay rule and its exceptions.  Because the exclusion of evidence is

5    primarily an issue of state law, to the extent that this ground for relief is premised on the state

6    court's improper application of its own evidence laws, it is not cognizable in a federal habeas

7    court.

8            Moreover, the 5th DCA concluded in its opinion that the trial court had correctly

9    excluded the evidence under applicable California evidence rules.  At trial, defense counsel made

10   the following offer of proof:

11          "My offer of proof that I have is that a Ronald Bright, if he were called as a
            witness, would testify that at some point in time the decedent, Mr. Harris, the
12          alleged victim in this case, made some comments that he was fearful that some
            person named Cecil Forthman and his brothers had threatened to kill Mr. Harris
13          because Mr. Harris had at some time previously stolen some methamphetamine
            from these people.

14
            "This is corroborated slightly, I admit, by the fact there was at least he part about
15          Mr. Harris being a methamphetamine user would be corroborated by the fact that
            toxicology done at the autopsy found methamphetamine in his system.  So there is
16          some rather attenuated tie-in there.  I do admit it is rather tenuous.

17          "[Bright] made a statement to a law enforcement officer, deputy Bendel.  I don't
            have a direct statement from Mr. Bright, he wasn't real interested in our getting
18          ahold [sic] of him.

19          "The person who purportedly threatened Mr. Harris, the decedent, was a fellow
            named Cecil Forthman, [ ], and Mr. Forthman's brothers.  And one fact that I
20          should note is that this was something that occurred two or three years prior to the
            actual events that we're in court on today."

21
22   (Reporter's Transcript on Appeal ("RT") 2-3; LD 5, pp.3-4).   The prosecution argued that the

23   statement was hearsay and was too remote in time to be relevant.  (RT 5-6; LD 5, p. 4).  The

24   prosecution furthered argued that, apart from his hearsay objection, the threat was so vague that it

25   merely would establish the "existence of a motive that Mr. Forthman would have for committing

26   some crime of violence against Mr. Harris, specifically the fact that the methamphetamine rip-off

27   had allegedly occurred and threat he had made years before Mr. Harris' death in reference to

28   ///

1    that." (RT 6).  The trial court concluded that the statement was "a hearsay usage and [was]

2    inadmissible to establish the fact that such statements were made."  (RT 8; LD 5, p. 4.).

3          Petitioner then argued on appeal that the statement fell within an exception to California's

4    hearsay rule as a statement against penal interest and that because the evidence had sufficient

5    indicia of reliability, exclusion of the evidence was a federal constitutional violation.  (LD 1, 2).[2]

6    The 5th DCA rejected any contention of state evidentiary error as follows:

7          "The hearsay exception for statements against penal interest is codified in
           Evidence Code § 1230:
8
9                'Evidence of a statement by a declarant having sufficient knowledge of
                the subject is not made inadmissible by the hearsay rule if the declarant is
10               unavailable as a witness and the statement, when made...so far subjected
                him to the risk of...criminal liability...that a reasonable man in his
11               position would not have made the statement unless he believed it to be
                true.'

12         "The proponent of such evidence must show that the declarant is unavailable,
           that the declaration was against the declarant's penal interest when made and that
13         the declaration was sufficiently reliable to warrant admission despite its hearsay
           character. [Citation.]' (People v. Duarte (2000) 24 Cal.4th 603, 610-611.)
14
15         "Here, obviously, the declarant is unavailable as he was the victim of the murder
           at issue.  The fundamental problem with the alleged statement, however, is that
16         the portion of that statement that was against the victim's penal interest–and hence
           presumably rendering the statement reliable despite its hearsay nature–is not even
17         relevant to the murder.  The alleged hearsay statement was essentially, 'Forthman
           and his brothers threatened to kill me because I stole methamphetamine from
18         them.'  The only statement against penal interest here is the reference to the
           victim's theft of methamphetamine, and the hearsay exception does not apply to
19         collateral assertions contained within statements against penal interest.  (See
           People v. Duarte, supra, 24 Cal.4th at p. 612, ["the hearsay exception should not
20         apply to collateral assertions within declarations against penal interest.") Rather,
           as the Supreme Court recently made clear, "we have declared [Evidence Code]
21         §1230's exception to the hearsay rule 'inapplicable to evidence of any statement

22              [2]Petitioner's presentation of this argument to the 5th DCA was somewhat convoluted.
23   Petitioner's Opening Brief couched the issue as an ineffective assistance of counsel argument,
     where counsel's ineffectiveness was based on his failure to argue the hearsay exception of a
24   statement against penal interest under state law. (LD 1).  In a Supplemental Brief to the 5th
     DCA, Petitioner added a second argument, contending that the trial court's exclusion of this
25   evidence violated Petitioner's constitutional rights because the evidence was sufficiently reliable
     to be admissible. (LD2).  Though technically Petitioner never contended that the trial court
26   improperly excluded the evidence under California evidence rules, the 5th DCA liberally
     combined the two arguments together and gave Petitioner the benefit of the doubt by addressing
27   the trial court's purported error both from the standpoint of California evidentiary law and federal
     constitutional law. (LD 5).
28

1
2

or portion of a statement not itself specifically disserving to the interests of the declarant.'   (Ibid.)  Here, the portion of the statement that even conceivably implicates third-party culpability–'Forthman and his brothers threatened to kill me'–was not remotely against the victim's penal interest."

3
4

(LD 5, pp. 4-5).  Federal courts are bound by state court rulings on questions of state law.

5

Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).  The 5th DCA's legal analysis of

6

California's hearsay rule is thus binding on this Court, and therefore, to the extent that

7

Petitioner's claim hinges on a purportedly erroneous application of state evidentiary law, it must

8

be rejected.  See Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990) ("incorrect" evidentiary

9

rulings are not the basis for federal habeas relief); Estelle, 502 U.S. at 67 (issues of state law not

10

cognizable in federal habeas corpus proceedings).

11

        To the extent that Petitioner's claim alleges that his constitutional rights were violated by

12

the trial court's exclusion of the proffered evidence, that too must be denied.  As mentioned

13

previously, under the AEDPA, habeas relief will not be granted unless the adjudication of a state

14

prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable

15

application of, clearly established Federal law, as determined by the Supreme Court of the United

16

States."  28 U.S.C. § 2254(d).

17

        The strongest source of clearly established law implicating Petitioner's claim is Crane v.

18

Kentucky, 476 U.S. 683 (1986).  Although addressing the exclusion of the circumstances of a

19

defendant's confession, the Supreme Court in Crane nevertheless reaffirmed the general principle

20

that criminal defendants have a "fundamental constitutional right to a fair opportunity to present

21

a defense."  Id. at 687 (citing California v. Trombetta, 467 U.S. 479, 485 (1984)).   As Justice

22

O'Connor observed:

23
24

        "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, ...or in the Compulsory Process or Confrontation clauses of the sixth Amendment, ...the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."

25
26

Id. at 690 (citing Trombetta, 467 U.S. at 485). (Citations omitted).

27

        However, a defendant's right to present evidence is not absolute; he must comply with

28

established rules of evidence and procedure.  Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir.

1  1992); <u>Perry v. Rushen</u>, 713 F.2d 1447, 1450 (9th Cir. 1983).  A trial judge retains "wide

2  latitude" to limit the defense's questioning of witnesses without violating the defendant's Sixth

3  Amendment rights.  <u>Michigan v. Lucas</u>, 500 U.S. 145, 149 (1991); <u>Delaware v. Van Arsdall</u>,

4  475 U.S. 673, 679 (1986).  Due process does not require the admission of all relevant evidence,

5  and the state may properly exclude relevant evidence pursuant to state evidentiary rules.

6  <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996).

7         Thus,  "[a] state court's evidentiary ruling is grounds for federal habeas corpus relief only

8  if it renders the state proceeding so fundamentally unfair as to violate due process."  <u>Bueno v.</u>

9  <u>Hallahan</u>, 988 F.2d 86, 87 (9th Cir. 1993)(per curiam); <u>see also Estelle</u>, 502 U.S. at 67

10  (reemphasizing that federal habeas court may not reexamine state court determinations on state

11  law questions.).  The Supreme Court has defined the category of infractions that violate

12  fundamental fairness very narrowly.  <u>See</u> <u>McGuire</u>, 502 U.S. at 72.

13         "To evaluate whether exclusion of evidence reaches constitutional proportions, we should

14  consider five factors: (1) the probative value of the excluded evidence on the central issue; (2) its

15  reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole

16  evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the

17  attempted defense."  <u>Tinsley</u>, 895 F.2d at 530.  The Court must then balance the importance of

18  the evidence against the state interest in exclusion.  <u>Id.</u>; <u>Miller v. Stagner</u>, 757 F.2d 988, 994

19  (9th Cir. 1985)   In so doing, a court must consider the purpose of the rule; its importance; how

20  well the rule implements its purpose; and how well the purpose applies to the case at hand.

21  <u>Stagner</u>, 757 F.2d at 994-995.  The court must give due weight to the substantial state interest in

22  preserving orderly trials, in judicial efficiency, and in excluding unreliable or prejudicial

23  evidence.  <u>Id.</u>

24         Here, the 5th DCA rejected Petitioner's claim that his constitutional rights were violated

25  by the trial court's exclusion of the third-party culpability evidence as follows:

26         "Appellant alternatively contends in supplemental briefing that, even if the
           statement did not fall within an exception to the hearsay rule, the trial court erred
27         in excluding it because it was critical to his defense and he had a constitutional
           due process right to present the statement.  In support of this argument appellant
28         cites a Ninth Circuit decision in which the court declared, '[W]hen a hearsay

10

1
2
3
4

statement bears persuasive assurances of trustworthiness and is critical to the defense the exclusion of that statement may rise to the level of a constitutional due process violation.' (<u>Chia v. Cambra</u> (9th Cir. 2002) 281 F.3d 1032, 1037, review granted March 10, 2003, and remanded, <u>McGrath v. Su Chia</u> (2003) 123 S.Ct. 1510; see also <u>Chambers v. Mississippi</u> (1973) 410 U.S. 284 [right to present a defense].)

5
6
7
8
9
10

"There are several problems with appellant's position.  First, as set forth above, the relevant portion of the statement at issue here does not 'bear [ ] persuasive assurances of trustworthiness.'  The relevant portion of the alleged statement [i.e., the threat] was in no way against the victim's penal interest; it was remote in time to the actual murder, and was double hearsay by the time the alleged death threat was relayed from Cecil Forthman, to the victim, to Bright.  Moreover, we are in no way bound by a federal court decision.  Rather, the evidence was properly excluded as it was a hearsay statement that fell within no exception to the hearsay rule, and furthermore, was so remote in time (the threat having allegedly been made 'two to three years' before Harris was murdered) it was properly excluded regardless.  (Evid. Code, § 352.)  In sum, appellant's due process right to present a defense does not obliterate ordinary evidentiary rules."

11   (LD 5, pp. 5-6).

12       Applying these factors to the facts in this case, it is patent that Petitioner's due process

13   rights were not violated by the trial court's exclusion of the third-party culpability evidence.

14   Although the 5th DCA did not go through an extended analysis of <u>Chia</u>, the case cited by

15   Petitioner, <u>Chia</u> in fact applies the five-part <u>Tinsley</u> test cited above.  <u>Chia</u>, 281 F.3d at 1037.

16   Accordingly, the state court utilized the appropriate "clearly established" federal law standard.

17   The question then becomes whether the state court's application of that "clearly established"

18   federal law was reasonable.  28 U.S.C. § 2254(d).  The Court concludes that it was.

19       First, the probative value of the statement on the central issue of Petitioner's culpability

20   for the death of Harris was *de minimis*.  Petitioner's attorney, in his offer of proof, indicated that

21   Harris had told Bright that the Forthmans had threatened him several years earlier because they

22   thought he had stolen methamphetamine from them.  The only evidence corroborating this

23   double hearsay statement was the admittedly "rather tenuous" evidence that the toxicology test

24   conducted during Harris's autopsy indicated he had previously used methamphetamine.

25   However, this evidence had only the slightest probative value in establishing Petitioner's

26   innocence by re-directing suspicion to the Forthmans.  The defense never proffered any other

27   evidence that the Forthmans actually attempted to act on the threat, or that they actually

28   committed the Harris murder, or that they had the opportunity to do so, or the means, or indeed,

that they still had the motive to do so at the time of Harris's death.  As such, the statement,
 without anything else to provide it with a context, was simply a "disembodied" statement with
little or no real relevance to the central issue of Petitioner's guilt.

Second, its reliability must be closely questioned.  It is a double hearsay statement
coming from Bright, and a triple hearsay statement coming from the written police report of
officer Bendel.  The Forthmans made a statement to Harris, who years later, apparently repeated
the statement to Bright.  Harris is not available to testify as to the context or the exact words of
the threat made by the Forthmans.  The defense made no effort to call the Forthmans as
witnesses.  Therefore, the only source for this statement now is Bright.  The defense proffered
neither the original speaker no the original  hearer of the threat.

The very reason that the hearsay exception for statements against penal interest exists is,
as the 5th DCA noted, that the very fact that the statement is against one's interest is what lends
it credence and imbues it with a quality of reliability.  Here, to the contrary, the statement itself,
i.e., the actual threat, was not against Harris's penal interest and, *ipso facto*, lacks the very indicia
of trustworthiness which justify making an exception to the hearsay rule in the first instance.
Accordingly, the Court concludes that the statement's reliability is highly questionable.

Third, the Court agrees with the 5th DCA that the statement, essentially uncorroborated
by any other defense evidence, could mislead and confuse jurors by permitting Petitioner's
counsel to attempt to fashion an entire defense from a single, minimally probative statement
made several years earlier by an individual now deceased and unavailable for further
examination, thus distracting the jury from its consideration of more relevant and probative
evidence regarding Petitioner's culpability.

Although it does appear that the evidence would not have been cumulative, and that it
would have been a key fact in the attempted defense,[3] those factors, on balance, do not outweigh
///

[3]At the pre-trial hearing on the admissibility of the Forthman threat, defense counsel
characterized the defense he would present at trial as "they've got the wrong guy."  (RT 9).

12

1  the others discussed above.  This is especially true in light of the remoteness of the statement

2  from the time of the offense.

3      Moreover, the state had a significant interest in excluding this evidence. which, as

4  mentioned, was highly attenuated, remote,  and whose slight probative value was outweighed by

5  its potential for misleading or confusing the jurors.  See Tinsley, 895 F.2d at 531.  Thus, given

6  the unreliability of the evidence, its minimal relevance, its potential for confusing the jurors, as

7  well as the "wide latitude" given to determinations of state court judges excluding "marginally

8  relevant" evidence, Crane, 476 U.S. at 689-690, the state court's decision to exclude the

9  proffered evidence cannot be said to have rendered the state proceedings so fundamentally unfair

10  as to violate Petitioner's due process rights.  See Tinsley, 895 F.2d at 530; Bueno, 988 F.2d at

11  87.[4]

12      The Court additionally concludes that even if the state court erred in excluding the

13  evidence, and even if, arguendo, such an error rose to the level of a constitutional violation, the

14  error was harmless constitutional error under Brecht v. Abrahamson, 507 U.S. 619, 622-623,

15  637-638 (1993).  "A federal court may grant habeas relief based on trial error only when that

16  error 'had substantial and injurious effect or influence in determining the jury's verdict.'"

17  Calderon v. Coleman, 525 U.S. 141, 145 (1998).   The United States Supreme Court has held that

18  the appropriate standard on collateral review for trial errors such as that asserted in Ground One

19  is whether the error resulted in "actual prejudice."  Brecht, 507 U.S. at 622- 623, 638.

20      Petitioner has failed to show actual prejudice resulting from the trial court's exclusion of

21  the third-party culpability evidence.  Without any corroborating evidence that actually connected

22  the Forthmans to Harris's death, any connection between the excluded threat and possible third-

23  _____

24      [4]It bears emphasis that when the state trial court excluded the proferred evidence, it noted
that it was sustaining the prosecution's hearsay objection "at this point" in the proceedings, and

25  that it would remain the order of the court "unless there's a development of additional
information that to some extent either gets around the hearsay objection or presents the evidence

26  in a different light [or] circumstance...."  (RT 9).  Thus, the state court left the door open for
Petitioner to present additional evidence that would either bolster the probative value of the

27  statement or, alternatively, that would obviate the hearsay problem.  The record does not reflect

28  that the defense ever offered any further evidence or information on this issue.

1  party culpability remains sheer speculation and would not, in the Court's view, have formed the

2  basis for a reasonable doubt in this case.   Under such circumstances, the Court concludes that

3  the state court's error, if any, in excluding the evidence did not have a substantial and injurious

4  effect in determining the jury's verdict.  Hence, it is harmless.

5  Based on the foregoing, the Court concludes that the state court's decision regarding this

6  claim was not contrary to, or an unreasonable application of, clearly established federal law.

7  Accordingly, Ground Two must be denied.

8  **Ground One**        **Petitioner Was Deprived Of Right To The Effective Assistance**
   **Of Trial Counsel When His Attorney Failed To Argue That**
9  **Third Party Evidence Fell Within An Exception To The**
   **Hearsay Rule**
10

11  Petitioner first contends that he was deprived of the effective assistance of trial counsel

12  because his trial attorney failed to argue that evidence of third-party culpability, which Petitioner

13  sought to have introduced at trial, fell within an exception to the hearsay rule, i.e., a declaration

14  against penal interest, that would have made such evidence admissible.  (Doc. 21, p. 5).  This

15  contention is without merit.

16  **A.  The Standard For Ineffective Assistance of Counsel**

17  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court

18  must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis,

19  21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was

20  deficient, requiring a showing that counsel made errors so serious that he or she was not

21  functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.

22  To establish this, the petitioner must show that counsel's representation fell below an objective

23  standard of reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts or

24  omissions that were not the result of reasonable professional judgment considering the

25  circumstances.  Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

26  Judicial scrutiny of counsel's performance is highly deferential, and a court indulges a strong

27  presumption that counsel's conduct falls within the wide range of reasonable professional

28  assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

1    Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious

2    as to deprive him of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688, 694.

3    To establish prejudice, petitioner "must show that there is a reasonable probability that, but for

4    counsel's unprofessional errors, the result of the proceeding would have been different.  A

5    reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.;

6    Williams v. Taylor, 529 U.S. at 391.   In so doing, the Court must also evaluate whether the

7    entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.;

8    Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir.

9    1994).

10    The Court does not need to consider the two elements in any particular order, nor does

11    the Court need to consider both if the showing on either one is insufficient.  Strickland, 466 U.S.

12    at 697.  A court need not determine whether counsel's performance was deficient before

13    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Id.  The

14    object of an ineffectiveness claim is not to grade counsel's performance.  Id.  "If it is easier to

15    dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect

16    will often be so, that course should be followed."  Id.  With these principles in mind, the Court

17    now turns to an analysis of Petitioner's claims of ineffective assistance of trial counsel.

18    **B.  Petitioner Was Not Denied the Effective Assistance of Counsel**

19    With regard to trial counsel's failure to successfully introduce evidence of third-party

20    culpability through an exception to the hearsay rule, Petitioner is mistaken.

21    In these Findings and Recommendations, the Court has already discussed and rejected the

22    claim that the trial court violated Petitioner's constitutional rights by excluding the proffered

23    evidence under the hearsay rule.  As discussed above, the Court concludes that no error occurred,

24    much less an error of constitutional dimension, and that the state court's determination was

25    neither contrary to nor an unreasonable application of clearly established federal law.  In light of

26    the Court's determination that this claim lacked any substantive merit, then, logically, trial

27    counsel's performance could not be deficient for failing to successfully argue for the admission

28    of the evidence under a particular exception to the hearsay rule.  Strickland, 466 U.S. at 687;

1  688, 694.  The state court's rejection of this issue was neither contrary to nor an unreasonable

2  application of clearly established federal law.

3  **RECOMMENDATIONS**

4  Accordingly, the Court RECOMMENDS that the Second Amended Petition for Writ of

5  Habeas Corpus (Doc. 21), be DENIED.

6  These Findings and Recommendations are submitted to the United States District Judge

7  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule

8  72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

9  California.  Within twenty (20) days after being served with a copy, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

12  shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after

13  service of the objections.  The District Judge will then review the Magistrate Judge's ruling

14  pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections

15  within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v.</u>

16  <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17

18  IT IS SO ORDERED.

19  Dated:   **September 21, 2007**                    **/s/ Theresa A. Goldner**

20  UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28